IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

|  |  |  |
|---|---|---|
| ANTHONY L. WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:11-cv-459-JAG |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Anthony L. Wood ("Plaintiff"), age 41, alleges that he suffers from rheumatoid arthritis and obesity.[1] On February 22, 2008, Plaintiff applied for Supplemental Security Income ("SSI"). On June 30, 2009, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff did not qualify for SSI. The Appeals Council remanded Plaintiff's case to the ALJ for further development on April 9, 2010. On December 7, 2010, the ALJ on remand again concluded that Plaintiff failed to qualify for SSI. On appeal, Plaintiff included new evidence to the Appeals Council. The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In his decision, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that Plaintiff would have to arise from a seated position three or four times an hour for a short duration; that he could not be exposed to heights,

---

[1] Plaintiff weighed 334 pounds and is 5 feet, 4 inches tall. (R. at 628.)

steps, or dangerous/unprotected machinery; that he would be limited to simple, unskilled tasks, not requiring the ability to understand, remember and carry out more than simple job instructions; that he could occasionally bend, or push/pull and could work on level surfaces only; that he could only occasionally crawl, kneel, squat, crouch or stoop; that he could lift overhead only occasionally; and that he could reach (not overhead), handle and finger at times but not repetitively. (R. at 18.)  The ALJ also determined that Plaintiff could perform jobs that existed in significant numbers in the national economy.  (R. at 23-24.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g).  The parties have submitted cross-motions for summary judgment, which are now ripe for review.[2]  Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons that follow, it is the Court's recommendation that Defendant's motion for summary judgment (ECF No. 8) be GRANTED; that Plaintiff's motion for summary judgment (ECF No. 6) be DENIED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

### A.    Plaintiff's Work History

Plaintiff was 37 years old when he filed for SSI.  (R. at 217.)  Plaintiff completed the ninth grade.  (R. at 55.)  In the fifteen years before the alleged onset date, Plaintiff worked a total of nine months.  (R. at 276.)  During those nine months he was a pallet sorter and car detailer.

---

[2] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

(R. 277-79.) Although Plaintiff alleges that he began to feel pain working as a pallet sorter, he stopped working when he was no longer needed. (R. at 34.) Following his job as a pallet sorter, Plaintiff held a position stuffing envelopes for a couple weeks before he quit due to pain in his hands. (R. at 51-52.)

## B.   Plaintiff's Medical History

Plaintiff was first diagnosed with rheumatoid arthritis in 2005. (R. at 426.) He frequently visited VCU Medical Center complaining of pain in his knees, ankles, arms, back, hips, hands and toes. (R. at 425.) During this time, doctors prescribed Methotrexate, Prednisone, Motrin and Embrel for Plaintiff. (*See e.g.*, R. at 306, 518, 619.) Throughout the course of his treatment, Plaintiff attempted to reduce his medications or stopped taking the medicines altogether. (R. at 519.) At one point, Plaintiff stopped taking anti-inflammatory medication (Methotrexate, Prednisone and Motrin), because his primary care physician told him his kidneys were "bad." (R. at 519.) In October 2007, a rheumatologist noted that Plaintiff's pain stemmed from an exacerbation of his arthritis caused by his failure to take his anti-inflammatory medications. (R. at 519.) The rheumatologist advised him to restart his prescription for Methotrexate, Prednisone and Motrin. (R. at 519.)

In April 2009, Plaintiff visited a rheumatoid arthritis clinic and complained of 10/10 pain in his left arm and right knee. (R. at 625.) Plaintiff's rheumatologist assessed his arthritis as "active" and restarted Plaintiff's prescription for Embrel. (R. at 625.) However, in August 2009, the attending rheumatologist at VCU Medical Center questioned whether Plaintiff's complaints of pain were embellished as an attempt to gain disability benefits. (R. at 624.) Specifically, the rheumatologist noted that Plaintiff "walked in [to the clinic] with a limp, but [walked] out

without" one. (R. at 624.) By this time Plaintiff had stopped taking Methotrexate, because the drug was "too expensive." (R. at 624.)

Despite not taking Methotrexate, Plaintiff showed no active synovitis in the hands, knees, ankles or feet during his August 2009 examination. (R. at 624.) The rheumatologist also noted that Plaintiff's rheumatoid arthritis was under good control. (R. at 624.) A November 2009 examination again showed no synovitis or effusion. (R. at 623.)

In June 2010, Plaintiff was reported as doing well on Embrel. (R. at 619.) Plaintiff's rheumatologist performed an x-ray of his feet and found "no radiographic evidence of rheumatoid arthritis." (R. at 589.) Similarly, there was no bony erosion on either foot to suggest rheumatoid arthritis. (R. at 589.) The report did note that there was mild osteoarthritis of the dorsal talonavicular joint in his right and left foot. (R. at 589.)

C.    **Plaintiff's Activities of Daily Living**

On his Activities of Daily Living ("ADL") form (R. 264-272), Plaintiff claimed that he required help from a family member to get out of bed every morning and put on clothing. (R. at 265.) Plaintiff noted that while he could feed himself, he required the assistance of his sister to wash his hair, because he could not lift his arms. (R. at 266.) Plaintiff reported that he did not drive due to the pain in his hands and ankles and that he did not have any hobbies or interests, because he had been sick for so long. (R. at 268-69.) In a Function Report completed in May 2008, Plaintiff indicated that he did not shop and his family took care of all household chores. (R. at 267-68.)

In February 2009, Plaintiff wrote that he liked to try to help fold clothes, wash dishes, vacuum and cut the grass. (R. at 291.) Plaintiff also noted that he went to the grocery store "usually once a month." (R. at 291.) At the grocery store he either used a motorized cart or

4

simply took his time and rested by holding onto the cart.  (R. at 291.)  Furthermore, Plaintiff

indicated that he watched television for two to three hours a day, visited a friend occasionally

and liked to play monopoly with his niece and nephew about once a week.  (R. at 292.)

### D.    Plaintiff's Testimony

On November 3, 2010, Plaintiff testified that he had to stand about three or four times an

hour due to swelling in his joints and could only walk for about seven to eight minutes.  (R. at

36-37.)  He used ice packs to ice his knees three times a day to help with the swelling.  (R. at 42.)

Additionally, Plaintiff testified that he only made himself cereal or a quick sandwich, left his

house only once a month and did not participate in any social organizations.  (R. at 44-45.)

Plaintiff stated that he sometimes read the sports section, but did not understand "big words."

(R. at 55.)  Plaintiff testified that frequent use of his hands exacerbated his arthritis.  (R. at 51.)

He noted that he held a job stuffing envelopes for two weeks, but stopped because of pain and

tremors in his hands.  (R. at 51.)  At the hearing, Plaintiff was able to pick up a piece of paper

with his index finger and thumb.  (R. at 39.)  He also testified that he could lightly grip and grasp

a soda can and owned a cell phone but did not text on it.  (R. at 56.)

### E.    The Vocational Expert

Ruth Fast, M.Ed., CRC, CCM, testified as a vocational expert ("VE") at Plaintiff's

hearing.  (R. at 57-63, 66-69, 210.)  The ALJ asked the VE whether any jobs would be available

for a hypothetical younger individual with limited education, work history and the disabilities of

Plaintiff.  The hypothetical qualified Plaintiff's capabilities and noted:

> For both sedentary jobs and light jobs, minimal, no heights, steps, use of
> hazardous machinery, because of balance problems; limited to unskilled or entry
> level positions; can understand, remember and carry out simple instructions; only
> occasional bending at the waist; only occasional pushing and pulling and working
> with level surfaces; only occasional overhead reaching; only occasional squat,
> crawl, kneel, stoop or crouch; and reaching and handling, that is to say gripping

5

and grasping, can be frequent at times, but not repetitive, such as that required in assembly line work. (R. at 58.)

In response, the VE identified two positions that existed which the hypothetical individual could perform — telephone quotation clerk and order clerk. (R. at 24, 59.)  She reported that the order clerk position existed in the national economy in the approximate numbers of 31,000 jobs and around 850 in Virginia. (R. at 59.)  The telephone quotation clerk position existed in the national economy at 100,000 jobs and around 2,500 in Virginia. (R. at 59.)  When the Plaintiff's attorney asked whether Plaintiff's limited education would allow him to perform the duties of telephone quotation clerk and order clerk, the VE affirmed that Plaintiff's education did not preclude him from the positions. (R. at 68.)

The VE also differentiated between Plaintiff's previous job, stuffing envelopes, and the order and telephone quotation clerk positions.  She testified that while stuffing envelopes is a "production job," requiring "constant use of the hands in repetitive motion," both clerk positions would not require the same intense production line type work. (R. at 66-67.)  Instead, the VE noted that the order clerk and telephone quotation clerk were positions in businesses with limited amounts of inventory and simplified requirements for reporting. (R. at 67.)  The VE noted that the job of order clerk could include a person who answered the phones and took an order for a pizza delivery. (R. at 67.)  The VE testified that an order clerk is considered an unskilled job with a specific vocational preparation ("SVP") of 2; essentially, unskilled work that a person with a ninth grade education would be capable of performing the job. (R. at 67.)

F.    **Evidence Submitted to Appeals Council**

Plaintiff provided a report by Peder K. Melberg, M.A., C.R.C., a vocational evaluator, to the Appeals Council when he appealed the ALJ's decision. (*See* R. at 318-319.)  Mr. Melberg indicated that he "reviewed the decision dated December 7, 2010, written by Judge Timothy C.

6

Pace of the Richmond Office of Disability Adjudication and Review. . . and offer[ed] [his] comments." (R. at 318.) Mr. Melberg based his report on the decision of the ALJ and not the record as a whole. (R. at 318.)

Based on the ALJ's findings, Mr. Melberg's report concluded that the jobs of telephone clerk and order clerk were either unsuitable or unavailable for Plaintiff. (R. at 318-19.) Mr. Melberg asserted that the job of order clerk was a semi-skilled job and not an unskilled job, as the VE testified. (R. at 318-19)

Additionally, Mr. Melberg's report indicated that the position of telephone clerk, as described by the *Dictionary of Occupational Titles* ("*DOT*"), no longer existed. (R. at 318.) According to Mr. Melberg, the only telephone clerk position listed in the *DOT* was a clerk in a telegraph office. (R. at 319.) His report noted that telegraph offices no longer existed in the United States. (R. at 319.) Furthermore, Mr. Melberg indicated that a telephone order clerk position is listed under the title, "order clerk, food and beverage." (R. at 319.) However, Mr. Melberg's report dismissed the order clerk, food and beverage position claiming that it had been integrated into the functions of a server/hostess or room service clerk, both of which are classified as light work. (R. at 318-19.) Mr. Melberg concluded that Plaintiff "could not perform the jobs of order clerk and telephone clerk." (R. at 318-19.)

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI on February 21, 2008, claiming disability due to rheumatoid arthritis with an alleged onset date of February 1, 2007. (R. at 217.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 130-

---

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404,

34, 135-39.) In February 2009, Plaintiff testified before an ALJ. (R. at 11.) On June 30, 2009, that ALJ issued a decision denying Plaintiff benefits. (R. at 116-24.) The Appeals Council remanded Plaintiff's case for further development on April 9, 2010. (R. at 125-29.)

The ALJ held a hearing on November 3, 2010, (R. at 26-75), and concluded on December 7, 2010, that Plaintiff failed to qualify for SSI, (R. at 14-25). Plaintiff included new evidence when he appealed to the Appeals Council. (R. at 317-18.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (*See* R. at 1-5.)

### III. QUESTIONS PRESENTED

Did the Commissioner satisfy his burden of proof at step five?

Did the Appeals Council err by declining to review new evidence presented to the Council?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

---

subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

To find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

("SGA").[4]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the

analysis ends and the claimant must be found "not disabled," regardless of any medical

condition.  *Id.*  If the claimant establishes that he did not engage in SGA, the second step of the

analysis requires him to prove that he has "a severe impairment . . . or combination of

impairments which significantly limit[s] [his] physical or mental ability to do basic work

activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c).  To qualify as a severe

impairment that entitles one to benefits under the Act, it must cause more than a minimal effect

on one's ability to function.  20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment

listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to

last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis

ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed

impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to

determine whether the claimant can return to his past relevant work[5] based on an assessment of

the claimant's residual functional capacity ("RFC")[6] and the "physical and mental demands of

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

10

work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence in the record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

## V. ANALYSIS

Applying the above described framework, the ALJ determined that Plaintiff was not disabled. (R. at 24.) The ALJ found at step one that Plaintiff was not engaged in substantial gainful employment since February 22, 2008 — his date of application and amended alleged onset of disability. (R. at 16.) Next, the ALJ determined that Plaintiff was severely impaired with rheumatoid arthritis and obesity. (R. at 16.) However, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 18.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC, determining that he had the ability to perform sedentary work. (R. at 18.) However, the ALJ provided numerous caveats, including: he would have to arise from a seated position three or four times an hour for a short duration; he would be limited to simple, unskilled tasks, not requiring the ability to understand, remember and carry out more than simple job instructions; he could only occasionally bend, or push/pull; and he could reach (not overhead), handle and finger frequently at times but not repetitively. (R. at 18.)

In assessing Plaintiff's RFC, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms not credible. (R. at 20.) The ALJ assigned little weight to Plaintiff's statements due to numerous inconsistencies with his testimony and the facts in the record. (R. at 20.) For example, by November 2009 Plaintiff had stopped taking Methotrexate, but physical examinations showed no active synovitis and that Plaintiff's rheumatoid arthritis was under control. (R. at 17.) Additionally, in August 2009 a physician at the rheumatology clinic at VCU Medical Center observed Plaintiff walk into the clinic with a limp, but walk out without one. (R. at 20.)

12

The ALJ then determined at step four of the analysis that Plaintiff had no past relevant work that would constitute substantial gainful activity. (R. at 23.) At step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined that Plaintiff was capable of adjusting to the demands of employment opportunities that existed in significant numbers in the national economy. (R. at 23.) After hearing the VE's findings, the ALJ declared that Plaintiff could perform the jobs of an order clerk and telephone clerk. (R. at 24.)

Plaintiff argues that the ALJ's hypothetical to the VE failed to quantify how often Plaintiff could "frequently" use his hands to handle and finger; therefore, the ALJ failed to carry the burden of proof at step five, "thus entitling [Plaintiff] a final judgment in his favor." (Pl.'s Mem. at 5-6.) Additionally, Plaintiff challenges the accuracy of the VE's findings and asserts that the Court should remand his case to allow the Commissioner to weigh and resolve the "conflicting evidence" between the evidence that he presented after the ALJ's decision and the VE's testimony. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3.) Because Plaintiff provided new evidence, the Court must determine whether a sentence six remand is necessary. (*See* Pl.'s Mem. at 7.)

In response, the Commissioner contends that substantial evidence supports the findings of the VE. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 10.) The Commissioner further asserts that the ALJ posed a complete hypothetical question to the VE. (Def.'s Mem. at 14.) Also, the Commissioner submits that a typographical error made by the ALJ would not have changed the outcome of the ALJ's decision. (Def.'s Mem. at 15.) Furthermore, the Commissioner argues that the ALJ met his burden of proof at step five in establishing that there were jobs in the national economy that existed in significant numbers that Plaintiff could perform. (Def.'s Mem. at 16.)

**A.      The ALJ properly instructed the VE by quantifying how often Plaintiff could "frequently" use his hands to handle and finger.**

Plaintiff initially alleges that the ALJ failed to properly instruct the VE on the limitations of Plaintiff.  Specifically, Plaintiff asserts that the ALJ's hypothetical to the VE failed to quantify the meaning of "at times" regarding how often Plaintiff could "frequently use his hands to handle and finger." (Pl.'s Mem. at 5.)  Plaintiff contests that without this specification, the VE's assessment lacked relevance, because he did not know Plaintiff's true functional capacity and thus could not make an accurate conclusion as to potential occupations that Plaintiff could perform.  (Pl.'s Mem. at 6.)

At step five, the Commissioner must demonstrate that considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5).  The Commissioner can carry his burden in the final step with the testimony of a VE.  A VE "may offer expert opinion in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work" or any other work as generally performed in the national economy.  20 C.F.R. §§ 404.1560(b)(2), (c)(2).  However, for a VE's opinion to be relevant, "it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

Here, the hypothetical that the ALJ posed to the VE contained a complete explanation of Plaintiff's limited ability to handle and finger.  The ALJ determined that Plaintiff had the RFC to perform sedentary work, but with numerous caveats.  (R. at 18.)  In posing his hypothetical to the VE, the ALJ stated that "reaching and handling, that is to say gripping and grasping, can be

14

*frequent at times, but not repetitive.*" (R. at 58 (emphasis added).) The ALJ further quantified "frequent at times" as "not repetitive such as that required in assembly line work." (R. at 58.) Accordingly, the hypothetical questions posed by the ALJ to the VE were not misrepresentative of Plaintiff's RFC.

Further, the VE's testimony indicated that she understood Plaintiff's RFC as posed through the ALJ's hypothetical. When asked by the ALJ if Plaintiff's hand tremors would impact the ability to be a telephone quotation clerk or order clerk, the VE responded, "No." (R. at 60.) When asked by Plaintiff's attorney to differentiate between the job of order clerk and Plaintiff's previous job of envelope stuffing, the VE stated that stuffing envelopes was a production job, "highly repetitive and [] more intense, basically constant use of hands in repetitive motion." (R. at 66.) Thus, the VE relied on a fully developed understanding of Plaintiff's limitations in concluding that there were jobs that existed in substantial numbers in the economy that Plaintiff could perform.

Plaintiff claims that due to an incomplete hypothetical, the ALJ failed to carry the burden of proof in identifying a job that he could perform. (Pl.'s Mem. at 5.) However, while the ALJ's RFC assessment failed to quantify "at times" in his written decision, the omission did not affect the assessment made by the VE. (*Compare* R. at 18 *with* R. at 58.) As previously noted, the ALJ properly instructed the VE on Plaintiff's RFC by quantifying his ability to handle and finger. (R. at 58.) Thus, the ALJ satisfied his burden at step five.

**B.    The Appeals Council did not err in denying Plaintiff's request for review, because Plaintiff's new evidence, a vocational counselor's report, was not material.**

Second, Plaintiff requests that the Court remand his case to allow the Commissioner to

weigh and resolve the conflicting evidence presented by Plaintiff after the ALJ's decision.[7]

(Pl.'s Mem. at 3.)  In determining whether the ALJ's decision was supported by substantial

evidence, a court cannot consider evidence that was not presented to the ALJ. *Smith v. Chater*,

99 F.3d 635, 638 n.5 (4th Cir. 1996) (internal citations omitted).  However, the Act allows a

court to remand a case for reconsideration in two situations.  42 U.S.C. § 405(g).  The first is a

"sentence four" remand, which provides that a "court shall have power to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security with or without remanding the cause for a rehearing."

*Id.*

The second type of remand is a "sentence six" remand, which provides that a court "may

at any time order additional evidence to be taken before the Commissioner of Social Security,

but only upon a showing that there is new evidence which is material and that there is good cause

for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*; *see also*

*Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (a reviewing court may remand a case on

the basis of newly discovered evidence if four prerequisites are met: (1) the evidence must be

---

[7] Similarly, Plaintiff insists that the Appeals Council erred by failing to provide detailed justification for denying review. (Pl.'s Mem. at 4)  However, the Fourth Circuit requires a duty of explanation by the Appeals Council only when the additional evidence is new and material. *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980) (noting that if additional evidence is deemed immaterial by ruling court no further scrutiny is required).  The Notice of Appeals Council Action indicated that the Appeals Council "considered the reasons [Plaintiff] disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals Council." (R. at 1.)  Thus, the Appeals Council viewed Plaintiff's vocational counselor's letter as not material and did not need to provide an explanation. (*See* R. at 1.)

relevant to the determination of disability at the time the application was first filed and not be merely cumulative; (2) the evidence must be material; (3) there must be good cause for failure to submit the evidence before the Commissioner; and (4) the claimant must present to the remanding court a general showing of the nature of the new evidence).  Because Plaintiff has offered new evidence to the Court, the Court will address whether Plaintiff has fulfilled the requirements to justify a sentence six remand.

New evidence must relate to the determination of disability *at the time that the application was first filed*, and it must not concern evidence of a later-acquired disability, or of the "subsequent deterioration of the previously non-disabling condition." *Szubak v. Sec'y of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984) (citing *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982)); *see also Borders*, 777 F.2d at 955 ("The evidence must be relevant to the determination of disability at the time the application was first filed").  Evidence must also be material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him.  *Borders*, 777 F.2d at 955-56 (citation and internal quotation marks omitted).  In the case at hand, Plaintiff's new evidence is neither relevant nor material and therefore does not justify a sentence six remand.

Mr. Melberg's report is immaterial to the ALJ's final decision, because his analysis and conclusion is based on a typographical error in the ALJ's decision and there is no reasonable possibility that his report would have changed the outcome.  In his report, Mr. Melberg only relied on the ALJ's decision, which identified a potential occupation for Plaintiff as a "telephone clerk."  However, had Mr. Melberg reviewed the hearing transcript, he would have seen that the

VE's actual selection was "telephone *quotation* clerk."[8] (*Compare* R. at 59 *with* R. at 319.) The "telephone clerk" position — which Mr. Melberg attempted to treat as a distinct position — may not exist in the United States, (R. at 319.), however, the VE testified that there were 100,000 jobs nationally and 2,500 in Virginia for the position of "telephone *quotation* clerk." The ALJ cited to these same numbers when he described "telephone clerk" in his decision. (R. at 59, 24.) Because it did not address the VE's testimony and was based on a typographical error in the ALJ's decision, Mr. Melberg's report is not material. Therefore, Plaintiff's new evidence cannot change the ALJ's decision.

Additionally, Mr. Melberg's contention that the order clerk position cited by the ALJ and VE is semi-skilled and thus outside the capacity of Plaintiff similarly fails to meet the material standard of a sentence six remand. (R. at 318.)  While there are numerous variations of the order clerk position within the *DOT*, the VE testified that Plaintiff was capable of performing the position of food and beverage order clerk. (R. at 67 ("For example, if you call for a pizza, somebody answering the phone is an order clerk."))

The food and beverage order clerk position is described by the *DOT* as a SVP of 2, or unskilled work. *DOT*, "Food and Beverage Order Clerk," 209.567–014, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT02A.HTM (last viewed July 23, 2012). The VE's testimony identified the position of order clerk, food and beverage as an occupation that existed in the national and local economy in significant numbers.

---

[8] Plaintiff's vocational counselor stated that he "reviewed the decision dated December 7, 2010, written by Judge Timothy C. Pace of the Richmond Office of Disability Adjudication and Review. . . and offer[ed] the following comments." (R. at 318.) It is apparent that he did not review the entire record, because he failed to accurately analyze the testimony of the vocational expert.

(R. at 60.) The ALJ adopted the numbers cited by the VE. (R. at 24.) Thus, the ALJ did not err when he identified two positions that Plaintiff could perform, as indicated by the VE.

Therefore, Mr. Melberg's report failed to demonstrate that the ALJ's decision might reasonably have been changed. Evidence must be material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him. *Borders*, 777 F.2d at 955-56. Mr. Melberg's report was built on error and assumption, which renders it immaterial. Because Plaintiff's new evidence cannot be considered relevant or material, it therefore fails to meet the requirements of a sentence six remand.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (ECF No.6 ) be DENIED; that Defendant's motion for summary judgment (ECF No. 8) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable John A. Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                        /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia

Date  July 27, 2012